UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **APRIL LIVAS** | **CIVIL ACTION NO. 17-1352** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **TELEPERFORMANCE USA, INC.** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment [Record Document 17] filed by Defendant Teleperformance USA, Inc. ("TPUSA") seeking dismissal of Plaintiff's wrongful termination claims. TPUSA has produced evidence that Livas's repeated absences rendered her unqualified for her position and that enforcement of its no-show policy is a legitimate, nondiscriminatory reason for terminating her. [Record Document 17-2 at 14–18]. Plaintiff's sixty-five-word opposition adduces no countervailing evidence. [Record Document 19]. As a result, TPUSA's motion for summary judgment [Record Document 17] is **GRANTED**.

I.  **Background**

Plaintiff April Livas ("Livas") began to work for TPUSA as a call center representative in November 2013. [Record Document 17-1 at 1]. Upon being hired, she was given access to TPUSA's employee handbook, which provides that "[r]egular, predictable, and reliable attendance is an essential component of each employee's job performance." [Record Documents 17-1 at 1 and 17-4 at 2]. Under TPUSA policy, an employee who does not appear for work and does not contact her supervisor within two hours of the beginning of her scheduled shift

1

commits a "No Call/No Show" ("NCNS") violation, and two NCNS violations in a twelve-month period may result in termination of employment. [Record Document 17-4 at 3].

In order to treat her migraine headaches, Livas took full-time leave under the Family and Medical Leave Act ("FMLA") from February 11, 2015 to February 10, 2016. [Record Document 17-1 at 2]. In February 2016, she renewed her request for FMLA leave, but her physician certified that she needed leave "1 time per 3 months for 1 day per episode." [Record Documents 17-1 at 2 and 17-6 at 7]. After her new period of leave began on February 11, 2016, Livas missed a great deal of work. [Record Document 17-1 at 2–3]. Before she was terminated on April 12, 2016, Plaintiff missed seventeen days of work for a variety of reasons and was late two additional times. [*Id.* at 2–4]. TPUSA classified the first two missed days as FMLA leave. [*Id.* at 2]. Although Livas usually called TPUSA's employee attendance line to report her absences, she did not do so on March 25 and 26, 2016.[*Id.*]. She later texted a manager that she had been unable to call in because she had been incarcerated. [*Id.* at 3]. In light of these two NCNS events, TPUSA decided to terminate Livas's employment. [*Id.* at 2–3]. When Plaintiff next reported to work on April 12, 2016, she was informed that she had been terminated. [*Id.* at 3–4].[1]

Following her termination, Livas's application for unemployment benefits was denied by the Louisiana Workforce Commission, which found that she had been discharged for misconduct. [Record Document 16 at 2]. On appeal, an administrative law judge (the "ALJ") reversed this determination because TPUSA did not participate in the hearing and thus did not

---

[1] Livas disputes TPUSA's contention that her access badge was deactivated on April 11, 2016 and insists that she was able to enter the building normally on April 12, 2016.[Record Document 19 at 1]. Livas has not provided any competent summary judgment evidence to this effect, and, even if she had, this fact is not material to the lawfulness of her termination.

sustain its burden of proving Livas's misconduct. [*Id.* at 3]. Livas also initiated proceedings before the Equal Employment Opportunity Commission ("EEOC"), which issued a right-to-sue letter on August 3, 2017. [Record Document 1-2]. Following service and an answer, TPUSA filed the instant motion in accordance with this Court's scheduling order. [Record Documents 12 and 17]. Livas has responded, rendering this matter ripe for adjudication. [Record Document 19].

## II. Law and Analysis

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

### B. ADA Standard

Title I of the Americans with Disabilities Act ("ADA") prohibits employers from discriminating against persons with disabilities. 42 U.S.C. §§ 12111–12117 (2012). The ADA defines a disability as a "physical or mental impairment that substantially limits one or more major life activities . . . ; a record of such an impairment; or being regarded as having such an

4

impairment." 42 U.S.C. § 12102(1) (2012). Because Congress has instructed courts to construe these definitions as broadly as possible, *id.* § 12102(4)(A), the "threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis," 29 C.F.R. § 1630.2(j)(1)(iii) (2017). To be protected by the ADA, an employee with a disability must be "qualified," that is, able to perform the essential functions of her position either with or without accommodations. 42 U.S.C. § 12111(8). Although courts must give weight to an employer's determination that a given job function is essential, *id.*, this "deference is not absolute," *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014) (citing 29 C.F.R. pt. 1630, app. § 1630.2(n) (2017)).

An ADA plaintiff with only circumstantial evidence must proceed under the *McDonnell Douglas* burden-shifting framework. *Id.* at 694 (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To survive summary judgment, the plaintiff must first make out a prima facie case that (1) she is disabled; (2) she was qualified for her position; and (3) she suffered an adverse employment action 'on account of her disability.'" *LHC Grp.*, 773 F.3d at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). If she successfully establishes her prima facie case, her employer must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 694 (citing *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)). If her employer can do so, the burden reverts to the plaintiff to produce evidence that her employer's explanation is pretext for unlawful discrimination or that her disability was a motivating factor in the employment decision. *Id.* at 702 (citing *Rachid v. Jack in*

*the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

C. <u>**Application**</u>

Because Livas offers no direct evidence that she was discriminated against because of her disability, she must proceed via the *McDonnell Douglas* framework. *Id.* at 694 (citing *Neely*, 773 F.3d at 245). Although not conceding the point, TPUSA assumes the Livas's migraines constitute a disability for ADA purposes. [Record Document 17-2 at 15]. This Court will do likewise.

TPUSA contends that Livas's repeated absences render her unqualified for her position. [*Id.*]. The Fifth Circuit has recognized that "regular attendance is an essential function of most jobs." *Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (citing *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996)). In light of this precedent, this Court sees no difficulty in deferring to TPUSA's determination that "[r]egular, predictable, and reliable attendance is an essential component of each employee's job performance." [Record Document 17-4 at 2]. While with two exceptions Livas followed company procedure for notifying TPUSA that she would be absent, her compliance with this procedure does not necessarily render her qualified for her position given TPUSA's reasonable determination that regular attendance is an essential job function.

Even if the Court were to assume that Livas was qualified, TPUSA has offered her two NCNS absences in support of its termination decision. [Record Document 17-2 at 17]. The ADA does not protect a disabled employee from termination for reasons unrelated to her disability. As no evidence suggests that Livas's disability affected her ability to call in and report

her absences on March 25 and 26, 2016, these absences are a legitimate, nondiscriminatory reason for her termination.

Livas must respond by identifying record evidence supporting her position that her firing was motivated by discriminatory animus. The only piece of evidence she offers is the ALJ's decision, which concluded that Livas "presented evidence to suggest that her absences were covered by FMLA" and that "her absences were for a valid reason, beyond her control, and with proper notice." [Record Document 16 at 3]. The ALJ's decision that TPUSA did not carry its burden to prove Livas's disqualification for unemployment benefits under state law has no preclusive effect on this Court's determination of her entitlement to relief under federal law. *See Thomas v. La., Dep't of Soc. Servs.*, 406 F. App'x 890, 895 (5th Cir. 2010) (per curiam) (citing La. Stat. Ann. § 23:1636 (2011)). Not only does Louisiana law render this decision non-binding, decision fails to address the specific absences that provided TPUSA with its legitimate, non-discriminatory reason. [Record Document 16 at 2–3]. As the relevant absences were caused not by Livas's medical condition, but by her incarceration, they are not protected under either FMLA or the ADA.

On summary judgment, this Court must draw inferences in favor of the plaintiff, *Anderson*, 477 U.S. at 255, but cannot do so if she produces nothing from which to draw them. Livas alleges that her absences were treated differently than those of other employees and that TPUSA's summary judgment evidence is false, but has produced no supporting evidence. [Record Documents 1 at 1 and 19 at 1]. Because Livas's single piece of evidence does not call into question TPUSA's nondiscriminatory reason for terminating her employment, she has failed

to carry her burden at this stage of litigation. TPUSA is entitled to summary judgment.

III. <u>Conclusion</u>

In light of the foregoing, TPUSA's motion for summary judgment [Record Document 17] is **GRANTED**.

**IT IS ORDERED** that all claims against TPUSA are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___19th___ day of ___JUNE___, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE